IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


WILLIAM ESSMAN,                      )
                                     )
                Plaintiff,           )
                                     )
vs.                                  )        Case No. 09-4001-SAC
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of                      )
Social Security,                     )
                                     )
                Defendant.           )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993).  At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy.  Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner
meets this burden if the decision is supported by substantial
evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On February 29, 2008, administrative law judge (ALJ) Guy E.
Taylor issued his decision (R. at 21-32).  Plaintiff alleges that
he has been disabled since December 27, 2005 (R. at 21).
Plaintiff is insured for disability insurance benefits through

December 31, 2009 (R. at 23).  At step one, the ALJ determined
that plaintiff has not performed substantial gainful activity
since December 27, 2005, the alleged onset date of disability (R.
at 23).  At step two, the ALJ found that plaintiff has the
following severe impairments: degenerative disc disease of the
lumbar spine, sciatic nerve left leg, bipolar disorder, and post-
traumatic stress disorder (R. at 23).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 24).  After determining plaintiff's RFC
(R. at 24-25), the ALJ found at step four that plaintiff is
unable to perform past relevant work (R. at 30).  At step five,
the ALJ found that there are jobs that exist in significant
numbers in the national economy that the plaintiff can perform
(R. at 31).  Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 31).

**III.  Did the ALJ err in his analysis of the opinions of Debra
Kirmer, a treating advanced registered nurse practitioner (ARNP)?**

In his decision, the ALJ made RFC findings for the plaintiff
which included numerous physical limitations, and also indicated
that plaintiff should have limited contact with the general
public (R. at 24-25).  In two other portions of his decision, the
ALJ noted that plaintiff had moderate difficulties with
concentration, persistence and pace (R. at 24, 30).  The ALJ also
found that plaintiff could perform simple work (R. at 30).  In

his hypothetical question to the vocational expert (VE), the ALJ, in addition to his RFC findings set forth in the decision, also stated that because of plaintiff's loss of concentration, persistence and pace, the person would be limited to only simple, unskilled work (R. at 701).

ARNP Kirmer was a treatment provider who saw plaintiff on multiple occasions from August 10, 2006 through January 9, 2008 (R. at 297, 616; Doc. 21 at 5). On January 7, 2008, she prepared a medical source statement of plaintiff's ability to do mental work-related activities. Her findings are summarized below:

> Plaintiff was found to have moderate[1] limitations in his ability to understand, remember and carry out detailed instructions.
>
> ARNP Kirmer then commented that plaintiff experiences significant mood instability and anxiety which affects his ability to function in a work setting.
>
> Plaintiff was found to have a slight[2] limitation in his ability to interact appropriately with the public and with supervisors.
>
> Plaintiff was also found to have moderate limitations in his ability to interact with co-workers, respond appropriately to work pressures in a usual work setting, and to respond appropriately to changes in a routine work setting.

---

[1]Moderate is defined as having a moderate limitation in this area, but the individual is still able to function satisfactorily (R. at 583).

[2]Slight is defined as having some mild limitations in this area, but the individual can generally function well (R. at 583).

> ARNP Kirmer then commented that plaintiff's
> level of anxiety and mood instability may
> lead to poor tolerance of frustration and
> difficulty managing feedback.

(R. at 583-584).

An ARNP is not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1513(a). However, evidence from "other sources," including nurse practitioners, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function. Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals. However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. SSR 06-03p, 2006 WL 2329939 at **2,3,5.

The ALJ noted the opinions of ARNP Kirmer, and then provided the following discussion of her opinions:

[T]he undersigned notes that a nurse
practitioner is not an "acceptable medical
source" as she is not a licensed physician or
licensed psychologist (20 CFR 404.1513(a) and
20 CFR 416.913(a). A nurse practitioner is an
"other source" (20 CFR 404.1513(d) and
CFR 416.913 (d)). However, the undersigned
has considered such opinions in light of SSR
06-3p. As such, the opinion of the nurse
practitioner is not accorded controlling
weight. Moreover, the opinion of the nurse
practitioner is not consistent with the
evidence of record. Even the claimant did not
allege he had difficulty getting along with
others or had difficulty with changes in the
work setting. The fact he has been able to
maintain substantial part-time employment
belies that opinion. Mr. Essman testified he
did have difficulty understanding directions
on the job, but neither that testimony nor
the opinion of the nurse practitioner
precludes him from performing simple, routine
work activity. Moreover, based on the record,
it is reasonable that the claimant
experiences moderate difficulties with
concentration, persistence and pace because
of depression and anxiety. However, his past
work and his current temporary work
demonstrate his ability to work in spite of
such limitations. Furthermore, the work he
currently performs on a significant part-time
basis is less restrictive tha[n] the residual
functional capacity found herein. This leads
the undersigned to conclude he could perform
more simple work on a regular and continuing
basis.

(R. at 30).

According to SSR 06-03p, the ALJ should explain the weight

given to opinions from "other sources," including ARNPs, or

otherwise ensure that the discussion of the evidence in the

determination or decision allows a subsequent reviewer to follow

the ALJ's reasoning when such opinions may have an effect on the

outcome of the case.  2006 WL 2329939 at *6.  The question raised by the plaintiff is whether the ALJ sufficiently articulated, what weight, if any, he gave to the opinions of ARNP Kirmer.

In making his RFC findings regarding plaintiff's mental limitations, the ALJ did not cite to the opinions of any other treating, examining, or non-examining medical or "other" source; the ALJ only mentioned the opinions of ARNP Kirmer regarding plaintiff's mental limitations.  Therefore, the weight given to the opinions of ARNP Kirmer will clearly have an effect on the outcome of this case.

The ALJ stated that the opinions of ARNP Kirmer are "not consistent with the evidence of record" (R. at 30).  However, the ALJ's hypothetical question to the VE states that plaintiff is limited to simple, unskilled work because of a loss of concentration, persistence, and pace (R. at 701).  The ALJ also indicated in his decision that plaintiff had moderate difficulties in maintaining concentration, persistence, and pace (R. at 24, 30), and could perform simple work on a regular and continuing basis (R. at 30).  The ALJ did not cite to any other medical opinion evidence in the record to support his finding that plaintiff is limited to simple, unskilled work.  ARNP Kirmer opined that plaintiff had moderate limitations in the ability to understand, remember, and carry out detailed instructions, but only had a slight limitation in the ability to understand and

remember short, simple instructions, and no limitation in the
ability to carry out short, simple instructions (R. at 583).
Thus, the finding of the ALJ that plaintiff is limited to simple,
unskilled work appears to be consistent with the opinions of ARNP
Kirmer. In the absence of any citation to other opinion evidence
to support this limitation, it appears that the ALJ gave some
weight to the opinions of ARNP Kirmer regarding this limitation.

The ALJ discounted the opinions of ARNP Kirmer because
plaintiff has been able to maintain substantial part-time
employment. Furthermore, the ALJ stated that the work plaintiff
currently performs on a significant part-time basis is less
restrictive than the residual functional capacity found herein
(R. at 30), which led the ALJ to conclude that plaintiff could
work in spite of his limitations and could perform simple work on
a regular and continuing basis (R. at 30). Plaintiff has been
working as a security guard at Wal-Mart for 23-24 hours a week,
but never more than 30 hours (R. at 23, 674-676).

However, the ALJ found that these part-time earnings do not
rise to the level of substantial gainful activity (R. at 23).
Furthermore, the VE testified that a person with the RFC
contained in the hypothetical question could not perform
substantial gainful activity in work plaintiff has done in the
past (R. at 701), which included his current part-time work as a
security guard (R. at 700). Even the ALJ found at step four that

plaintiff could not perform any past relevant work, including
work as a security guard (R. at 30).  Plaintiff testified that he
could not work a full 40 hour week because of his disabilities
and his impairments (R. at 676).  Thus, the uncontradicted
evidence in the record indicates that a person with the RFC
findings contained in the hypothetical question could not engage
in substantial gainful activity as a security guard.

Plaintiff argues that the ALJ decision does not make clear
how the ALJ reached his conclusions regarding ARNP Kirmer's
opinion as applied to Essman's RFC (Doc. 16 at 14).  According to
SSR 96-8p, the RFC assessment "must include a narrative
discussion describing how the evidence supports each conclusion,
citing specific medical facts...and nonmedical evidence."  The
ALJ must explain how any material inconsistencies or ambiguities
in the evidence in the case record were considered and resolved.
The RFC assessment must always consider and address medical
source opinions.  If the RFC assessment conflicts with an opinion
from a medical source, the ALJ must explain why the opinion was
not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are
binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>,
493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967
(1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir.
1993).  When the ALJ fails to provide a narrative discussion
describing how the evidence supports each conclusion, citing to

specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. <u>See</u> <u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ only included two mental limitations in plaintiff's RFC, i.e., that plaintiff should have limited contact with the public (R. at 25), and that plaintiff is limited to simple, unskilled work (R. at 30, 701). The ALJ indicated that plaintiff had moderate difficulties with maintaining concentration,

persistence, and pace (R. at 24, 30), and because of plaintiff's
loss of concentration, persistence, and pace, he would be limited
to simple, unskilled work (R. at 701). The ALJ also indicated
that plaintiff should only have limited contact with the public
due to agoraphobia (R. at 701). However, the ALJ failed to
explain the basis for these findings.

The record does contain three psychiatric review technique
forms filled out by nonexamining medical sources.  All three
forms indicate that plaintiff only has mild difficulties in
maintaining concentration, persistence, or pace (R. at 224, 234,
367, 377, 443, 453).  Thus, none of the findings on these three
forms supports the ALJ's finding that plaintiff has moderate
difficulties with maintaining concentration, persistence, and
pace, which was the rationale provided by the ALJ for limiting
him to simple, unskilled work.  However, as noted above, ARNP
Kirmer had found that plaintiff had moderate limitations in the
ability to understand, remember, and carry out detailed
instructions, but only had a slight limitation in the ability to
understand and remember short, simple instructions, and no
limitation in the ability to carry out short, simple instructions
(R. at 583).  Thus, the ALJ's finding that plaintiff was limited
to simple, unskilled work appears consistent with the opinions of
ARNP Kirmer.  However, the ALJ failed to indicate what evidence
he relied on in making this finding.  If the ALJ did rely on ARNP

Kirmer's opinions regarding plaintiff's ability to handle simple, but not detailed instructions, the ALJ offered no explanation for giving weight to some of ARNP Kirmer's opinions, but not others.

The ALJ also indicated that plaintiff should have limited contact with the general public.  However, the ALJ, contrary to the requirements of SSR 96-8p, failed to set forth what evidence supported this limitation.  ARNP Kirmer found that plaintiff only had a slight limitation in the ability to interact appropriately with the public, but had moderate limitations in the ability to interact with co-workers, respond appropriately to work pressures in a work setting, and respond appropriately to changes in a routine work setting (R. at 584).  Thus, the ALJ's mental RFC findings are not consistent with the opinions of ARNP Kirmer in these categories.  No other medical opinion evidence in the record discusses plaintiff's mental limitations.  In light of the ALJ's failure to comply with SSR 96-8p because he did not link his mental RFC findings with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.

In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute

14

substantial evidence.  The court stated that no other medical

evidence in the record specifically addressed her ability to

work.  The court held as follows:

> To the extent there is very little medical
> evidence directly addressing Ms. Fleetwood's
> RFC, the ALJ made unsupported findings
> concerning her functional abilities. Without
> evidence to support his findings, the ALJ was
> not in a position to make an RFC
> determination.
>
> The ALJ's inability to make proper RFC
> "findings may have sprung from his failure to
> develop a sufficient record on which those
> findings could be based." Washington v.
> Shalala, 37 F.3d 1437, 1442 (10th Cir.1994).
> The ALJ must "make every reasonable effort to
> ensure that the file contains sufficient
> evidence to assess RFC." Soc. Sec. R. 96-8p,
> 1996 WL 374184, at *5. Because the disability
> hearing is nonadversarial, an ALJ is
> obligated to develop the record even where,
> as here, the claimant is represented by
> counsel. Thompson v. Sullivan, 987 F.2d 1482,
> 1492 (10th Cir.1993); accord Hawkins v.
> Chater, 113 F.3d 1162, 1164, 1168 (10th
> Cir.1997). Even though Ms. Fleetwood's
> counsel did not request any additional record
> development, the need for additional evidence
> is so clearly established in this record that
> the ALJ was obliged to obtain more evidence
> regarding her functional limitations. See
> Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741.  See Heslop v. Astrue, Case

No. 06-1343-WEB (D. Kan. Dec. 5, 2007, Doc. 14 at 11-13)(The

court found the ALJ made unsupported RFC findings when the only

medical evidence regarding plaintiff's RFC, from the plaintiff's

treating physician, was rejected by the ALJ); Cox v. Astrue, Case

No. 07-1370-WEB (D. Kan. Sept. 16, 2008, Doc. 12 at 15-17) (The

only medical evidence before the court directly addressing plaintiff's RFC was either rejected or given little weight. Furthermore, the ALJ failed to articulate what evidence served as the basis for his RFC findings as required by SSR 96-8p. Therefore, the court found that the ALJ made unsupported findings concerning plaintiff's functional abilities, and remanded the case for further hearing); Avila v. Astrue, Case No. 08-1327-MLB (D. Kan. Nov. 10, 2009, Doc. 16 at 18)(The only medical evidence before the court addressing plaintiff's mental RFC was either rejected or given little weight.  The ALJ also failed to articulate what evidence served as the basis for his RFC findings.  Therefore, the court held that the ALJ made unsupported findings concerning plaintiff's functional abilities).

In the case before the court (Essman), there is very little medical evidence directly addressing plaintiff's mental RFC, and the ALJ either rejected or gave little weight to the opinions of a treatment provider regarding plaintiff's mental RFC. Therefore, the court finds that the ALJ made unsupported findings concerning plaintiff's mental functional abilities.  Furthermore, it is not clear what weight, if any, was accorded to the opinions of ARNP Kirmer, who is the only treatment provider or medical source to offer opinions regarding plaintiff's mental RFC.  The ALJ also failed to provide substantial evidence to support his

finding that either some or all of ARNP Kirmer's opinions were not consistent with the evidence of record. When this case is remanded, the ALJ needs to make sure to develop a sufficient record on which RFC findings can be based, and must comply with the requirements of SSR 96-8p when making his RFC findings. If the ALJ makes RFC findings which do not include some or all of the limitations set forth by ARNP Kirmer, the ALJ must provide a legally sufficient explanation for why those limitations were not adopted.[3]

## IV. Did the ALJ err in his credibility analysis?

Plaintiff argues that the ALJ erred in his credibility analysis. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v.

_____

[3]Defendant, in his brief, argues that even if the ALJ had given controlling or substantial weight to the opinions of ARNP Kirmer, those limitations would not have precluded all work (Doc. 21 at 6). However, there is no evidence in the record that would support this assertion by defendant.

Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court would first note that the credibility analysis may be affected by the ALJ's need to make sure he has developed a sufficient record on which mental RFC findings can be based, and to make RFC findings which comply with SSR 96-8p, including a clear and legally sufficient explanation of what weight, if any,

should be given to the opinions of ARNP Kirmer.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  On remand, the ALJ shall make new credibility findings in accordance with the standards set forth above.

However, the court will comment on the issue of the weight accorded by the ALJ to plaintiff not taking medication (R. at 27, 28, 29, 30).  SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7; see Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009).  One medical record indicates that plaintiff had not been on medications for 5 months because he had no insurance (R. at 282), and plaintiff testified

that he sometimes ran out of medication because he did not have insurance (R. at 683-684). Therefore, on remand, the ALJ shall comply with SSR 96-7p and consider any explanations from the case record that may explain the failure to take medication.

Second, before the ALJ may rely on a claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). This analysis applies when noncompliance with a physician's recommendation is used as part of the credibility determination. Piatt v. Barnhart, 231 F. Supp.2d 1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); Silverson v. Barnhart, Case No. 01-1190-MLB (D. Kan. May 14, 2002)(Belot, J.); Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1294-1296 (D. Kan. (April 15, 2002)(Crow, S.J.).

Defendant contends that the Frey test is not applicable in this case. However, the ALJ appears to have discounted plaintiff's credibility because he quit taking prescription medications. Thus, this is not a situation where the Frey test is not required because the treatment or medication had not been

prescribed, and the ALJ is simply considering what attempts the claimant made to relieve their pain.  See McAfee v. Barnhart, 324 F. Supp.2d 1191, 1201 (D. Kan. 2004); Jesse v. Barnhart, 323 F. Supp.2d 1100, 1108 (D. Kan. 2004); Billups v. Barnhart, 322 F. Supp.2d 1220, 1226 (D. Kan. 2004).  Therefore, on remand, the ALJ must apply the Frey test when considering plaintiff's decision to quit taking prescription medications as part of the credibility analysis.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on November 25, 2009.


s/Gerald B. Cohn
GERALD B. COHN
United States Magistrate Judge